UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABEL LUNA VALDEZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:24-cv-01442-CKD<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be granted and the Commissioner's cross-motion for summary judgment be denied.

BACKGROUND

Plaintiff, born in 1966, applied on May 12, 2022 for SSI, alleging disability beginning November 1, 2019. Administrative Transcript ("AT") 17, 29. Plaintiff alleged he was unable to work due to femur, shoulder, back, and arm impairments as well as bipolar, depression, sleep disorder, and schizophrenia. AT 272. In a decision dated January 16, 2024, the ALJ determined

that plaintiff was not disabled.[1]  AT 17-30.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since May 12, 2022, the application date.
>
> 2. The claimant has met his burden of proof under Chavez v. Bowen.[2]
>
> 3. The claimant has the following severe impairments: major depressive disorder; anxiety disorder; substance abuse disorder; and psychotic disorder.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

[2] The ALJ continued: "The claimant is now over 55 years old, a person of advanced age.  This age change is sufficient to satisfy the 'changed circumstance' requirement under Chavez v. Bowen."  AT 19.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving simple work-related decisions, few workplace changes, and no more than occasional interpersonal interaction with supervisors, co-workers, and the public.

6. The claimant has no past relevant work.

7. The claimant was born [in 1966] and was 55 years old, which is defined as an individual of advanced age, on the date the application was filed.

8. The claimant has a limited education.

9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, since May 12, 2022, the date the application was filed.

AT 19-30.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in discounting plaintiff's allegations of mental dysfunction; (2) the ALJ erred in evaluating the opinion of the treating certified Physician's Assistant; (3) the ALJ erred in evaluating the opinion of the psychological consultative examiner; and (4) the agency regulations direct a finding of disabled at step five based on plaintiff's vocational profile.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

3

F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A.  Medical Opinions

        1.  Charles Odipo, Ed.D.

Plaintiff claims that the ALJ erred by failing to account for moderate mental limitations opined by the psychological examiner, without explaining why he discounted these limitations in formulating the RFC, and that this error was harmful.  Defendant argues that the ALJ reasonably found Dr. Odipo's opinion only "partially persuasive" due to its inconsistences with the longitudinal record.

On November 18, 2022, Dr. Odipo, a psychologist, conducted a mental status evaluation of plaintiff at the request of the Department of Social Services for the purpose of establishing disability status.  AT 789-91.  Dr. Odipo noted that plaintiff reported a history of depression, mood swings, paranoia, and hallucinations and had been hospitalized for suicidal ideation and

1 attempts. AT 789. Plaintiff's "[c]urrent psychiatric symptoms" included sadness, seeing things, auditory hallucinations, anhedonia, mood swings, irritability, racing thoughts, and isolation. AT 789. His symptoms had reportedly worsened since 2019, when his wife died in a car accident. AT 789. He was currently in psychiatric treatment, though had not yet met with his new psychiatrist. AT 789-90. "He has very little work history as an adult due to his multiple incarcerations and mental health problems." AT 790. He was also impacted by medical, pain, and mobility problems after an accident broke his left leg, requiring a metal rod in his leg. AT 789. Dr. Odipo noted that plaintiff could perform self-care tasks and complete household chores; however, he tended to isolate and his relationship with family and friends was poor due to paranoia. AT 790.

Dr. Odipo observed that plaintiff had poor eye contact, was "sad looking and was observed responding to internal stimuli," and had difficulty with attention, concentration, and comprehension. AT 790. "Motor skills were impaired and he walked gingerly." AT 790. Dr. Odipo conducted a mental status exam and noted dysphoric mood, restricted affect, slow thought process, poor general knowledge, and fair concentration. AT 790.

Turning to the functional assessment, Dr. Odipo opined that plaintiff could "adequately perform one or two step simple repetitive tasks." AT 791. Dr. Odipo continued:

> Has difficulty accepting instructions from supervisors and interacting with coworkers and the public due to psychotic and manic symptoms and paranoia. He is deemed markedly impaired.
>
> Has difficulty maintaining regular attendance in the workplace without accommodations due to psychotic, paranoia and pain problems. He is deemed moderately impaired. . . .
>
> Has difficulty handling normal work-related stress from a competitive work environment without accommodations. . . . He is deemed markedly restricted.

AT 791.

The ALJ assessed this opinion as follows:

> On November 18, 2022, the claimant cooperated with a consulting psychological evaluation by Charles Odipo, Ed.D. . . .[3] Overall, Dr.

---

[3] The court omits the ALJ's summary of Dr. Odipo's report.

5

> Odipo concluded that the claimant remained able to perform simple tasks. Dr. Odipo also concluded the claimant had a marked impairment in his ability to interact appropriately with co-workers, supervisors, and the public. This level of impairment is not consistent with, or supported by the treatment records. It also is noted that at the time of this exam, the claimant had reported he had been off his medication, waiting to start treatment with a new provider. His presentation, therefore (including response to internal stimuli) was more pronounced than usual. For all of these reasons, [Dr. Odipo's opinion] is only partially persuasive.

AT 28, citing AT 789-791.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because plaintiff filed his application in 2022, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will

6

1 articulate how he considered the most important factors of supportability and consistency, but an
2 explanation for the remaining factors is not required except when deciding among differing yet
3 equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b).  The new
4 regulations "still require that the ALJ provide a coherent explanation of his reasoning" and
5 establish "a minimum level of articulation to be provided in determinations and decisions, in
6 order to provide sufficient rationale for a reviewing adjudicator +or court." Sam-Chankhiao v.
7 Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v.
8 Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

9     Here, plaintiff argues that the RFC did not account for certain limitations opined by Dr.
10 Odipo, including "one- to two-step simple repetitive tasks."  The ALJ characterized this as a
11 limitation to "simple, routine, and repetitive tasks" and put it in the RFC.  However, plaintiff
12 claims the missing one- to two-step limitation is significant. In Rounds v. Comm'r, 807 F.3d 996,
13 1003 (9th Cir. 2015), the Ninth Circuit held that "there [is] an apparent conflict between [an] RFC
14 [that] limits [plaintiff] to performing one- and two-step tasks, and the demands of Level Two
15 reasoning, 'which requires a person to apply commonsense understanding to carry out detailed
16 but uninvolved written or oral instructions.'"; see, e.g., Alexandra H. v. Comm'r, 2025 WL
17 1752360, *4 (D. Or. June 25, 2025) (jobs identified by the vocational expert "required level two
18 reasoning, and level two reasoning is incompatible with a restriction to one- or two-step tasks"),
19 citing Rounds, 807 F.3d at 1003.  The ALJ found plaintiff was able to perform representative
20 occupations such as hand packager, laundry worker, and small products assembler, all of which
21 require level 2 reasoning.  AT 29.  Plaintiff could not have performed those jobs with a limitation
22 to one- to two-step tasks; yet, the ALJ failed to explain why Dr. Odipo's opined limitation to one-
23 to to-step tasks did not make it into the RFC.  This was harmful error.

24     Also, the ALJ neither adopted nor expressly discounted Dr. Odipo's findings that plaintiff
25 was moderately limited in his ability to maintain regular workplace attendance and markedly
26 limited in his ability to handle normal work-related stress.  This was also error.  See Maravillas v.
27 Comm'r, No. 2:23-cv-00782-CKD, 2024 WL 4333284, *4 (E.D. Cal. Sept. 27, 2024) (ALJ's
28 failure to explain his reasoning as to physician's opined moderate limitations was error)

(collecting cases). Plaintiff is entitled to summary judgment on this claim.[4]

B. <u>Step Five Error</u>

Plaintiff argues that agency regulations mandate a finding of disabled at step five based on plaintiff's vocational profile. Plaintiff cites 20 C.F.R. § 416.962(b), which provides in relevant part:

> If you have a severe, medically determinable impairment(s), and are of advanced age (age 55 or older), and have no past relevant work experience, we will find you disabled. If the evidence show that you meet this profile, we will not need to assess your residual functional capacity or consider the [Appendix 2] rules[.]

(Internal citations omitted.) Defendant argues that, when (as here) a plaintiff suffers from non-exertional limitations, an ALJ generally may not rely on this regulatory language, and that the ALJ did not err at step five.

Plaintiff points out that he was over 55 years old when he filed his application and had a limited education and no relevant work experience. AT 29. The ALJ found him to have multiple severe impairments: major depressive disorder, anxiety disorder, substance abuse disorder, and psychotic disorder. AT 20. Plaintiff argues that, because he meets the above criteria, a finding of disability is mandated under § 416.962(b).

Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie showing of disability. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999). At this point—step five—the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. <u>Id.</u>, citing 20 CFR § 404.1560(b)(3). There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can perform: (a) by the testimony of a vocational expert ("VE"), or (b) by reference to the Medical–Vocational Guidelines. <u>Id.</u> at 1100-01 (quoting 20 C.F.R. § 404.1560(b)(3).)

---

[4] The court does not reach plaintiff's other claims concerning whether the RFC is supported by substantial evidence.

The Medical-Vocational Guidelines ("the Grids") are a matrix system for handling claims that involve substantially uniform levels of impairment. Tackett, 180 F.3d at 1101. The Grids categorize jobs by their physical-exertional requirements, and each grid presents various combinations of factors relevant to a claimant's ability to find work. Id. As a court in this district has stated:

> The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

Terrill v. Berryhill, No. 1:17-cv-00751-BAM, 2018 WL 4503429, *2 (E.D. Cal. 2018) (finding ALJ improperly relied on Grids where plaintiff's non-exertional limitations, including limit on interacting with others, necessitated a VE). Citing the basic mental demands of competitive work under agency regulations[5], the Terrill court relied on the "weight of authority finding that a limitation on a claimant's ability to interact with either supervisors or coworkers precludes the ALJ from relying on the Grids." Id. at *4.

Here as in Terrill, plaintiff was found to have multiple severe mental impairments, including an RFC limiting him to no more than occasional interpersonal interaction with supervisors, co-workers, and the public. See Terrill, 2018 WL 4503429, *4 ("A number of courts have held that where an ALJ specifically limits a claimant's ability to interact with coworkers and supervisors, [this limitation] . . . has the potential to significantly erode the occupational base" and requires VE testimony) (collecting cases). In a 2020 case "nearly indistinguishable" from Terrill, the court found that "[b]ecause the ALJ limited Plaintiff to occasional interaction and no

---

[5] Social Security Ruling 85-15, providing in relevant part:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

9

collaborative work with others, the ALJ was required to obtain the testimony of a VE as to the effect of those limitations on her occupational base, and erred in relying on the Grids to direct a finding of no disability." Purcella v. Saul, 1:18-cv-01010-SKO, 2020 WL 58291, *8 (E.D. Cal. Jan. 6, 2020) (collecting cases). Plaintiff has not shown harmful error on this basis.

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed

period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

Accordingly, IT IS HEREBY ORDERED THAT the Clerk of Court assign a district judge to this action.

IT IS HEREBY RECOMMENDED THAT:

1. Plaintiff's motion for summary judgment (ECF No. 9) be granted;
2. The Commissioner's cross motion for summary judgment (ECF No. 11) be denied;
3. The Clerk of Court shall enter judgment for plaintiff; and
4. This matter be remanded for further administrative proceedings consistent with this order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  August 18, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/vald1442.ssi.ckd.f&rs